```
              UNITED STATES DISTRICT COURT
              EASTERN DISTRICT OF LOUISIANA


CHOUEST OFFSHORE SERVICES                CIVIL ACTION

VERSUS                                   NO: 04-446

SUPERIOR ENERGY SERVICES,                SECTION: "J" (4)
LLC
```

**AMENDED ORDER AND REASONS**

On October 13, 2006, this Court issued an Order and Reasons on several motions for summary judgment. (Rec. Doc. 223). This Court now issues this Amended Order and Reasons to correct errors inadvertently made on page 9 of the original order and reasons. This order does not change the substance of the Court's previous ruling.

Before the Court are the following four motions: (1) **Motion for Summary Judgment of Sotec, L.L.C. and Atlantic Insurance Company (Rec. Doc. 141);** (2) **Motion for Summary Judgment** filed by Cross-claimant Bollinger Shipyards, L.L.C. **(Rec. Doc. 147)**; (3) **Motion for Partial Summary Judgment** filed by International Marine Systems, LLC. **(Rec. Doc. 154)**; and (4) **Motion for Summary Judgment** filed by Zurich American Insurance Company, Insurance Company of North America, Boston Old Colony, St. Paul Insurance Company and Fireman's Fund Insurance Company, and St. Paul's Insurance Company **(Rec. Doc. 185)**. All the motions were opposed

1

and were set for hearing before the Court without oral argument.

Having reviewed the motions, the memoranda of counsel, and applicable law, the Court finds that material fact issues are present which preclude summary judgment with respect to the motions filed by Sotec, LLC (hereinafter referred to collectively with its insurer, Atlantic Insurance Company, as "Sotec"); Bollinger Shipyards Lockport, LLC ("Bollinger"); and Zurich American Insurance Company, Insurance Company of North America, Boston Old Colony, St. Paul's Insurance Company and Fireman's Fund Insurance Company (hereinafter "Underwriters"). This Court finds that the motion filed by International Marine Systems, LLC ("IMS") should be granted.

## Background Facts

This litigation involves a fire which ignited in the starboard engine room of the SUPERIOR GALE, owned by Superior Energy Services ("Superior") on February 19, 2003. The crew attempted to extinguish the fire by deploying a fire suppression system designed and installed by Sotec and believed that the fire was extinguished. However, the fire reignited (or, perhaps, regained strength after having never been completely extinguished) two hours later while the SUPERIOR GALE was being towed by a ship owned by Chouest Offshore Services, LLC ("Chouest"), which answered its emergency call. The fire was finally extinguished using hoses from the Chouest ship.

Chouest sued Superior under admiralty and maritime law, to receive payment for its towing services, for the fair market

value of the SUPERIOR GALE, and for the reasonable value of the lives saved. Superior filed third party claims against IMS, Bollinger, and Sotec. Superior's complaint alleges physical damages, loss of use, loss of revenue, lost profits, survey expenses and other related consequential damages, in excess of $2,000,000. IMS and Bollinger, in turn, filed cross-claims against Sotec for the alleged failure of its system to extinguish the fire.

IMS was responsible for installing alarm systems on the SUPERIOR GALE, including low fuel/low oil pressure alarms. This low fuel/low oil pressure alarm system malfunctioned frequently, causing a nuisance alarm when the main engines were shut down. Superior had IMS repair the system. In the repair, completed in the early morning of February 18, 2003, IMS installed a copper tubing fuel line in the starboard engine room. It is believed that this copper tubing was the source of the February 19, 2003 fire.

Bollinger contracted with Superior to design, manufacture, build and/or erect the SUPERIOR GALE, and to provide the SUPERIOR GALE with its alarm systems (for which Bollinger subcontracted with IMS) and a fire suppression carbon dioxide system (for which Bollinger subcontracted with Sotec). Bollinger completed the vessel and delivered it to Superior on December 13, 2002.

Sotec designed and installed a carbon dioxide fire suppression system on the SUPERIOR GALE pursuant to its contract with Bollinger. This system called for the user to seal the area

to be protected to prevent the carbon dioxide from escaping and to prevent combustible oxygen from entering the space. Although the crew members of the SUPERIOR GALE deployed the system after discovering the fire, there is evidence that oxygen leaked into the engine room (due, apparently, to a melted or burned shroud or "boot" that connected to the room's exhaust system).

## Discussion

**(1) Sotec's Motion for Summary Judgment(Rec. Doc. 141)**

Sotec essentially argues that there is no evidence to support Superior's allegations that it negligently designed and built a defective fire suppression system that was improperly tested. Sotec asserts that the system was built in keeping with Bollinger's specifications, and the design and plans were approved by Bollinger, the U.S. Coast Guard, and the American Bureau of Shipping.

Sotec argues that its design of the system was predicated on the understanding that if a fire occurred in an area, that area was to be immediately sealed off to prevent oxygen from entering the area, and that it was Superior's responsibility to seal the fire area. Sotec concludes that because it was Superior's responsibility to seal off the area, the failure of the system to fully extinguish the fire was not a result of Sotec's design or manufacture, but instead resulted from Superior's failure to properly seal the area. Therefore, there is no basis for a finding liability on the part of Sotec because of Sotec's design

or manufacture.  Thus, Sotec requests summary judgment in its favor, dismissing the claims made against it by Superior.

In opposition, Superior argues that the fire suppression system was designed to extinguish an engine room fire, and that although the crew properly deployed the system, it failed to perform as intended.  Superior claims the crew of the SUPERIOR GALE followed the proper procedure: they shut down the main engines and closed all vents to the room then deployed the carbon dioxide suppression system. However, smoke continued to come from the engine room, indicating that it was not completely sealed.

Superior argues that Sotec's duty was not merely to design, build and install the system according to Bollinger's specifications. Instead, Superior asserts that because Sotec installed the system and was present for its testing, it also had a duty to make certain that the engine room space could be completely sealed.  Thus, Superior suggests that under the circumstances, there are material issues of fact with respect to Sotec's liability which preclude summary judgment.

This Court agrees that there are material issues of fact in dispute regarding the cause of the system's failure and whether Sotec was obligated to ensure that the engine room could be properly sealed. Thus, Sotec's motion for summary judgment as to the claims made against it by Superior is denied.

This Court finds that summary judgment should be denied as to the claims made against Sotec by IMS for the same reasons it finds that summary judgment is inappropriate for Superior's

claims against Sotec.

Last, Sotec claims it is entitled to summary judgment on Bollinger's claim that Sotec is required to indemnify and hold Bollinger harmless against any and all liabilities, losses, damages, and expenses, including attorney's fees, incurred in connection with claims asserted against Bollinger in connection with work performed for Bollinger by Sotec - as set forth in the Master Work Contract ("MWC").

In its motion for summary judgment, Sotec argues that Bollinger's allegations fail to set forth a factual basis upon which indemnity may lie. Sotec claims it is required to provide indemnity to Bollinger only for claims asserted by Sotec employees arising out of work performed on the premises of Bollinger. Sotec argues that because no such claims are being asserted against Bollinger, Sotec owes no indemnification. It therefore requests summary judgment on the issue of indemnification and argues that Bollinger's cross-claim should be dismissed.

In opposition, Bollinger argues that Sotec's motion for summary judgment be denied.  Instead, Bollinger claims that it is entitled to a summary judgment determination that Sotec is obligated to defend, indemnify and/or insure Bollinger. Specifically, Bollinger disputes Sotec's interpretation of the indemnity provision and instead claims that the plain language of the MWC unambiguously requires Sotec to defend and indemnify Bollinger against all claims made "in connection with the work

6

performed, services rendered or materials furnished by Contractor to Bollinger."  Bollinger argues further that, even if the indemnity provision is ambiguous, the Court is authorized to consider the entire contract between the parties. As such, Bollinger asserts that the terms of the purchase order are incorporated by Section 2 of the MWC. The purchase order states that it is governed by Terms and Conditions as stated on Bollinger's website; the statement of Terms and Conditions contains an indemnity provision that does not restrict indemnity to suits by Sotec's employees.

Bollinger further notes that the insurance requirements of the MWC further support the indemnity obligation contended by Bollinger. Sotec was required to include Bollinger as an additional insured with a waiver of subrogation on Sotec's comprehensive general liability policy, and to obtain a contractual liability endorsement insuring Sotec's obligations under the contract. This insurance coverage was not limited in scope to claims asserted by Sotec employees, but for claims made by any persons.

Bollinger argues, finally, that because of these insurance requirements in the MWC, Sotec must defend and indemnify Bollinger irrespective of the defense and indemnity clauses. It asserts that where a party is contractually bound to provide insurance coverage, but fails to do so, it becomes an insurer. Under the MWC, Sotec was obligated to procure comprehensive general liability insurance with limits of $1,000,000 containing

7

the following endorsements in Bollinger's favor: 1) Additional insured endorsement; 2) Waiver of subrogation endorsement; 3) Contractual liability endorsement; and 4) "In rem" coverage endorsement. Thus, if the insurance Sotec procured does not provide these coverages, then Sotec breached its obligation to provide such coverage and stands in the shoes of Bollinger's insurer.

Bollinger argues that because it has been sued as a consequence of Sotec's work, Sotec is obligated to defend and indemnify Bollinger pursuant to the applicable contracts and insurance policy.

This Court determines that summary judgment should be denied because there are issues of material fact in dispute as to the ambiguous provisions in the various contracts between the parties.

**(2) Bollinger's Motion for Summary Judgment (Rec. Doc. 147)**

This Court determines that Bollinger's motion for summary judgment regarding the indemnity provisions in the MWC should be denied for the same reasons stated above.

**(3) IMS's Motion for Partial Summary Judgment (Rec. Doc. 154)**

This Court previously dismissed Superior's tort claims against Bollinger based on the Vessel Construction Agreement ("VCA") entered into between the parties.  On April 3, 2006, this Court entered an order that dismissed IMS's claim for tort contribution or indemnity against Bollinger based on this same agreement.

Now, IMS moves this Court for an order granting partial summary judgment and seeking application of the "proportionate share rule" so that any judgment against it in Superior's favor is reduced by the proportionate share of Bollinger's fault.

IMS asserts that under McDermott v. AmClyde, 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), Superior should bear Bollinger's proportionate share of fault in contributing to the casualty aboard the SUPERIOR GALE because of Superior's VCA with Bollinger, in which Superior waived all tort/negligence claims against Bollinger.  IMS argues that it cannot be held jointly and severally liable for the damages attributable to Bollinger because there are no tort claims remaining against Bollinger.

In opposition, Superior asserts that the proportionate share rule only applies where one of the joint tortfeasors is rendered immune from damage liability pursuant to a *voluntary settlement* agreement with the plaintiff. Bollinger is still potentially contractually liable for damages sustained to the SUPERIOR GALE; therefore, the proportionate share rule does not apply.  Thus, Superior asserts that as long as the fault of Bollinger and IMS, whether in contract or in tort, combined to cause the fire aboard the SUPERIOR GALE, each are jointly and severally liable for its damages.

This Court concludes that the proportionate share rule applies to this situation based on the VCA entered into by the parties, wherein Superior limited its ability to recover full damages from Bollinger, including loss of use damages and any

other damages not specified by contract.  This agreement essentially serves to reduce Superior's recovery of those damages by Bollinger's proportionate share of fault in causing them.  The Court bases its decision on the following analysis.

The Fifth Circuit has explained the proportionate share rule as follows:

> Under the proportionate share approach, the finder of fact must determine the total damages from all joint causes and the proportion of each tortfeasor's share of joint liability. Although principles of joint and several liability survive, a nonsettling defendant cannot initially be assessed any amount of damages larger than his proportionate share of all damages as determined by his proportionate share of all liability. Thus, under AmClyde, the nonsettling defendant is no longer entitled to a "credit" based on prior settlements. Rather, under AmClyde, it is the plaintiff who takes the risk of either a poor settlement or a favorable settlement with other defendants. However, the proportionate share rule, like its predecessor the pro tanto rule, applies only to cases in which there has been a settlement by a joint tortfeasor.

Westinghouse Credit Corp. v. M/V New Orleans, 39 F.3d 553, 555 (5th Cir. 1994), internal citations omitted.

In Central State Transit and Leasing Corp. v. Jones Yard, Inc., 206 F.3d 1373 (11th Cir. 2000),  the owner of a private pleasure vessel sued a boat yard seeking damages for injury to the vessel in dry dock.  The owner also sued the manufacturer of the dry dock, but settled its claim against the manufacturer for $150,000.  The owner was awarded damages against the boat yard, but appealed the district court's judgment limiting the boat yard's liability to its percentage of fault.  The owner argued on

appeal that the district court should not have limited the boat yard's liability to its proportionate share because the boat yard was not a joint tortfeasor.  The owner urged that the boat yard could not be a joint tortfeasor because the owner's claim against the boat yard was in contract while the claim against the manufacturer had been in tort.  The Eleventh Circuit held that the proportionate share rule nevertheless applied because the boat yard and the manufacturer operated in concert to cause a single injury to the owner.  Therefore, the Central State Court held only that a defendant is a joint tortfeasor when it operates in concert with other parties to cause a single injury to a plaintiff- regardless of the theories of liability that the plaintiff can claim against the other parties.

Here, this Court determines that IMS is a joint tortfeasor because Superior claims that IMS's acts allegedly joined with the acts of the other defendants to cause damage to the SUPERIOR GALE.  The real issue here is whether the VCA was a settlement that gives rise to the proportionate share rule.

In AmClyde, a crane owner ("Plaintiff") sued a crane manufacturer, crane hook manufacturer, and steel sling suppliers, seeking to recover for damages to a crane and offshore platform deck, which fell from the crane when its hook and slings broke.  Plaintiff settled with the sling supplier before trial.  The Supreme Court held that the liability of the non-settling defendants should be calculated with reference to the jury's allocation of proportionate responsibility.  This proportionate

share approach makes the nonsettling defendants responsible for precisely their share of the damages. 511 U.S. 202.

In footnote 10 in the AmClyde decision, the Court notes that the crane manufacturer was immune from damages because its contract with the Plaintiff provided that free replacement of defective parts constituted fulfillment of all liabilities.  The court likened this to an advanced "quasi settlement."  Plaintiff did not request that the nonsettling defendant pay any more than its share of the damages.  By using the proportionate share approach the Court avoided making the nonsettling defendant liable for its own share and for the damages allocated by the jury to the defendant.

The Fifth Circuit has also explained that the proportionate share rule applies when there has been a voluntary settlement. In such cases, the plaintiff's recovery against the settling defendant has been limited not by outside forces, but by its own agreement to settle. Coats v. Penrod Drilling Corp., 61 F.3d 1113, 1129 (5th Cir. 1995).  To permit contribution in such a case would lead to the absurd result that the non-settling tortfeasor was contributing funds to discharge the settling parties' liability without reducing its own exposure. S.J. Gargrave Syndicate v. Rolls-Royce Commercial Marine Inc., 2006 WL 83100, *1-2 (E.D.La. 2006).

Applying AmClyde to the facts of this case, this Court finds that because of its VCA with Bollinger, Superior's tort claims against IMS and Sotec should be reduced by Bollinger's

12

proportionate share of fault.  The claims against IMS and Sotec lie in tort.  This Court has dismissed Superior's tort claims against Bollinger by reason of the VCA.  The limitation on Superior's recovery was caused by its own consent to the VCA, not outside forces.  If the proportionate share rule is not applied, then IMS and Sotec are liable for the full amount of Superior's injury, including the damages allocated to Bollinger for its tortious conduct.  In effect, IMS and Sotec will be paying for the harm caused by Bollinger.  Bollinger remains liable for any damages that it caused as a result of its breach of contract.  Thus, partial summary judgment should be granted in IMS's favor on the issue of the proportionate share approach.

**(4) Zurich's Motion for Summary Judgment (Rec. Doc. 185)**

Underwriters filed a motion for summary judgment against Bollinger claiming that there is no coverage for Superior's breach of contract claims against Bollinger, which is an additional assured under the marine liability policy issued by Underwriters.  Underwriters argues that because breach of contract claims are all that Superior has left against Bollinger, there is no insurance coverage.

In opposition, Bollinger claims that the MWC it entered into with IMS governs work performed by IMS for Bollinger and work performed by IMS for third parties while on Bollinger's premises.  Bollinger claims certain provisions of the MWC entitle it to both direct and contractual liability protection under the policy.  Thus, Bollinger argues that there is coverage under the

policy regardless of whether Bollinger's liability arises under tort or contract theories.

This Court determines that issues of material fact exist based on ambiguous provisions in the MWC and in Underwriters' policy, which preclude summary judgment. Accordingly,

**IT IS ORDERED** that the **Motion for Summary Judgment of Sotec, L.L.C. and Atlantic Insurance Company (Rec. Doc. 141)** should be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment** filed by Cross-claimant Bollinger Shipyards, L.L.C. **(Rec. Doc. 147)** should be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Partial Summary Judgment** filed by International Marine Systems, LLC. **(Rec. Doc. 154)** should be and hereby is **GRANTED**. The proportionate share rule applies such that any judgment against IMS in Superior's favor is reduced by the proportionate share of Bollinger's fault.

**IT IS FURTHER ORDERED** and the **Motion for Summary Judgment** filed by Zurich American Insurance Company, Insurance Company of North America, Boston Old Colony, St. Paul Insurance Company and Fireman's Fund Insurance Company, and St. Paul's Insurance Company **(Rec. Doc. 185)** should be and hereby is **DENIED**.

New Orleans, Louisiana this 23rd day of October, 2006.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE